# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:19-cr-262 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| DAEMONTE D. SIMS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of *pro se* defendant Daemonte Sims ("Sims") to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. No. 51.) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 55), and Sims has filed a reply. (Doc. No. 59.) For the reasons that follow, the motion to vacate is DENIED.

## I.   BACKGROUND

On May 1, 2019, a one-count indictment issued charging Sims with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. No. 1.) The facts underlying the weapons charge also supported one of several alleged supervised release violations in Case No. 5:12-cr-128 (N.D. Ohio). CJA Attorney Brian Pierce was appointed to represent Sims in connection with these matters. (CJA 20 Appointment, 5/16/2019.) Attorney Pierce died unexpectedly in 2019, after Sims was sentenced. (*See* Doc. No. 21 (Order).)

On July 8, 2019, pursuant to the terms of a plea agreement, Sims entered a counseled plea of guilty to the felon-in-possession charge. (Minutes of Proceedings [non-document], 7/8/2019;

Doc. No. 8 (Plea Agreement).) During the change of plea hearing, the Court conducted its standard plea colloquy with Sims in compliance with Rule 11 of the Federal Rules of Criminal Procedure. The Court reviewed with Sims the constitutional rights he was forfeiting by entering a guilty plea and also reviewed with Sims the terms of the plea agreement in detail. The agreement contained a comprehensive waiver of rights. According to the plea agreement, Sims expressly and voluntarily waived his right to appeal his conviction and sentence, "including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through a post-conviction proceeding, including a proceeding under 28 U.S.C. § 2255." (Doc. No. 8, at 6.[1]) The agreement did, however, reserve Sims' right to appeal: (1) any punishment in excess of the statutory maximum; or (2) any sentence to the extent it exceeded the maximum of the sentencing imprisonment range determined by the sentencing guidelines. (*Id.*) Sims also retained the right to raise claims of ineffective assistance of counsel and prosecutorial misconduct on appeal, including in a collateral attack. (*Id.*) The agreement further provided that each party was free to recommend and advocate for a particular sentence within the applicable sentencing guidelines range. (*Id.* at 5.)

The sentencing hearing was conducted on October 21, 2019, during which Sims was asked, on two occasions, if he wished to have a separate hearing on the supervised release violations that did not involve his illegal possession of a weapon. (Doc. No. 27 (Transcript of Sentencing Hearing), at 14, 16–17.) He advised the Court that he wished to forego the hearing and admit the remaining supervised release violations. (*Id.*) The Court also adopted, without objection from the parties, the advisory guideline calculation in the Final Presentence Investigation Report ("PSR")

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

of 51 to 63 months for the felon-in-possession conviction. (Doc. No. 13.) The range was computed based upon a criminal history score of 17 (following a three-level reduction for acceptance of responsibility) and a criminal history category of VI. (Doc. No. 27, at 3–4.)

Prior to the sentencing hearing, appointed counsel filed a thorough sentencing memorandum, addressing the applicable sentencing factors and stressing his client's position that he possessed the weapon on the date charged in the indictment because he feared for his safety. (Doc. No. 16.) Defense counsel raised this issue, again, during the sentencing hearing. Counsel discussed at length the events leading up to the present indictment wherein Sims witnessed a murder, a friend who was also present at the scene of the murder was killed days later, and Sims was ultimately informed by law enforcement that his own life was in jeopardy. (Doc. No. 27, at 19–21, 24–25.) The Court also heard testimony from Sims' probation officers, who testified to their conversations with Sims regarding the death threats made against Sims and his interest in serving his period of supervision in another jurisdiction as a result. (*Id*. at 41–42.) Counsel argued that these facts warranted a downward variance under the sentencing guidelines and further justified concurrent sentences for the felon-in-possession conviction and the supervised release violations. (*Id.* at 21; *see id*. at 42.)

The government advocated for a sentence at the high end of the applicable sentencing guidelines range, given the serious nature of the offense, and the fact that previous grants of leniency on supervision violations had been followed by further violations. (Doc. No. 27, at 44.) While the Court believed that a high-end sentence was warranted, the Court agreed to give Sims' safety concerns "some consideration" in fashioning its sentence. Nevertheless, the Court expressed its concern regarding Sims' "extensive criminal record[,]" which the Court described as "quite

alarming."[2] (Doc. No. 27, at 50, 52.) Also of concern was the fact that Sims committed the weapons offense while on supervision in another case, suggesting that he was unable or unwilling to comply with the law and court-imposed terms of release. (*Id.* at 51.) Ultimately, the Court imposed a sentence of 57 months, which fell in the middle of the applicable sentencing guidelines range. (*Id.* at 52.) The Court also sentenced Sims to 18 months for the supervised release violation and held that the two sentences would be served consecutively.[3] (*Id.* at 54.)

Sims took a direct appeal, represented by new counsel. (*See* Doc. No. 22 (Appeal Remark Appointing Appellate Counsel).[4]) Therein, he attacked this Court's decision not to apply a downward departure under U.S.S.G. § 5K2.12 because he allegedly committed the § 924 offense while under duress and in fear for his safety. He also challenged the effectiveness of trial counsel. In a decision dated November 5, 2020, the Sixth Circuit affirmed the Court's judgment. (Doc. No. 31 (Opinion).) While observing that the district court did afford Sims consideration for his safety concerns in fashioning its sentence, the Sixth Circuit found that, in the plea agreement, Sims waived any right to challenge a within-guidelines sentence and that this waiver was both knowing and voluntary. (Doc. No. 31, at 3–5.) The Court elected not to reach Sims' ineffective assistance

---

[2] During his allocution, Sims conceded that his criminal history was "horrible." (Doc. No. 27, at 27.) The Court agreed and asked Sims if he was aware that his record corresponded with the "highest criminal history category that there is[.]" (*Id.* at 28.)

[3] In running the sentences consecutively, the Court emphasized that in the prior case, Sims had originally violated his supervision terms within weeks of being released. His supervision was revoked and he served a new prison term, followed by another term of supervision. Within one week of his release on the second term, he committed three of the four supervised release violations charged in Case No. 5:12-cr-128. The fourth violation, involving the weapon and ammunition violation that is also the subject of the felon-in-possession charge herein, was committed a month later. These facts, the Court found, were further evidence Sims was not amenable to following the law and that prior sentences had not deterred him from engaging in criminal behavior. (Doc. No. 27, at 52–53.)

[4] Prior to his death and the appointment of new counsel, Attorney Pierce filed a timely notice of appeal on behalf of Sims. (Doc. No. 20.)

4

of counsel claim, finding the record to be insufficiently developed to address on direct appeal. (*Id.* at 5–6.)

On October 6, 2021, Sims filed the present motion to vacate. Prior to filing the motion, Sims moved for the appointment of counsel. (Doc. No. 32.) The Court denied the motion, noting that there is no constitutional right to counsel for collateral appeals and finding that Sims had not demonstrated that "the interests of justice so require" the appointment of counsel in the present case pursuant to 18 U.S.C. § 3006A(a)(2)(B). (Order [non-document], 12/9/2020.)

## II.   STANDARD OF REVIEW

A federal prisoner may attack the validity of his sentence by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 in the district court where he was sentenced. Section 2255 sets forth four grounds upon which a federal prisoner may state a claim for relief: "[1] the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] [the sentence] is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

To prevail under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974)).

The movant bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam). Vague and conclusory claims that are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *see Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).

When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required "'to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). The burden borne by a § 2255 petitioner to obtain a hearing is not especially onerous. *See Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003). A petitioner, however, is not entitled to an evidentiary hearing if he has not alleged any facts that, if true, would entitle him to federal habeas relief. *See McSwain v. Davis*, 287 F. App'x 450, 458 (6th Cir. 2008); *Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that an evidentiary hearing was "unnecessary" where there was "nothing in the record to indicate that [the petitioner] would be able to prove his allegations" at a hearing); *see also Napier v. United States*, No. 93-5412, 1993 WL 406795, at *2 (6th Cir. Oct. 8, 1993) ("To be entitled to a hearing, the prisoner must set forth detailed factual allegations which, if true, would entitle him to relief under § 2255." (citing, among authorities, *Machibroda v. United States*, 368 U.S. 487, 496, 82 S. Ct. 510, 7 L. Ed. 2d 473 (1962)); *cf. Valentine*, 488 F.3d at 334 (finding that the burden is met where the petitioner "offers more than a

6

mere assertion . . . he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'").

Moreover, a hearing is not necessary when a petitioner's claims "'cannot be accepted as true because they are contradicted by the record, inherently incredible, or [are] conclusions rather than statements of fact.'" *Id*. (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where, as here, the judge considering the § 2255 motion also presided over the plea and sentencing hearings, the judge may rely on her recollections of the proceedings. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

The Court finds that an evidentiary hearing is not warranted in the present case. As set forth in detail below, Sims has failed to identify facts that, if true, would entitle him to relief under § 2255. Moreover, many of the arguments offered by Sims in support of the present motion are either waived, contradicted by the record, or are adverted to in a perfunctory and conclusory manner, preventing further review by this Court.

### III. DISCUSSION

#### A. Equal Protection (Ground Two)

The Court may dispense quickly with Sims' "petition[ to] this Court to give him the judicial benefit guaranteed" by the U.S. Constitution. (Doc. No. 51, at 5.) While the Court must construe a *pro se* petition liberally, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976), even a *pro se* litigant must set forth facts that entitle him to relief. *See generally O'Malley*, 285 F.2d at 735 (noting that a movant must set forth facts which entitle him to relief when making a motion to vacate or set aside a judgment under § 2255).

In its entirety, Sims' second ground for relief provides:

> A citizen of this Country whether he be innocent or knowingly guilty of a government infraction at the least . . . requires that the Court grant him the benefit of its judicial authority of equal justice for all.

(*Id.*, capitalization omitted.)

Sims makes no effort to explain how he was denied equal protection at any time prior to the Court announcing its judgment (or even to allege that he was denied such protection). Case law does not require the Court to guess the factual basis underpinning a defendant's claims or construct legal arguments on his behalf. Indeed, it is well settled that perfunctory and undeveloped arguments, "unaccompanied by some effort at developed argumentation[,]" are waived. *Thomas v. United States*, 849 F.3d 669, 679 (6th Cir. 2017) (citation omitted); *see United States v. Sandridge*, 385 F.3d 1032, 1035–36 (6th Cir. 2004). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court . . . to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quotation marks and citations omitted). Additionally, such arguments do not comply with the Rules Governing Section 2255 Proceedings for the United States District Court. Rule 2(b) requires that a motion must, among other things, "state the facts supporting each ground" for relief. Because Sims fails to give sufficient notice to the Court or the government as to how his constitutional rights were violated, he is entitled to no relief on this claim.

### B. Appointment of Counsel (Ground Three)

In his third "ground" for relief, Sims appears to request the appointment of counsel. He suggests that every citizen has the constitutional right to the benefit of a skilled attorney. (Doc. No. 51, at 7.) He offers no facts that would support the appointment of counsel for this collateral

appeal, and it is unclear whether he is challenging the Court's December 9, 2020 order denying his previous motion for counsel or is renewing his motion in his petition. (*See* Order [non-document], 12/9/2020.)

Sims is correct that the Sixth Amendment protects the right to counsel, and that this right includes the right of an indigent defendant to have counsel appointed for him. However, "the right to appointed counsel extends to the first appeal of right, and no further." *Pa. v. Finely*, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993, 95 L. Ed. 2d 539 (1987) (noting that the Supreme Court has never held "that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions[.]" (citations omitted)). And while the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A(a)(2)(B), permits a district court to appoint counsel to indigent defendants prosecuting a § 2255 motion, such an appointment requires a determination that "the interests of justice so require" the appointment.

The Court has reviewed the issues raised in this habeas petition and has determined that they are neither legally nor factually complex or otherwise require the appointment of counsel. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (identifying factors to consider under § 3006A for the appointment of counsel on collateral review). The Court has also determined that a hearing is unnecessary. Accordingly, the Court rules, once again, that Sim is not entitled to appointed counsel for purposes of this collateral proceeding. To extent that the third ground for relief is properly considered a "claim," it is denied.

### C. Failure to Afford a U.S.S.G. § 5K2.12 Departure (Ground Four)

In his fourth ground, Sims renews his argument raised on direct appeal that the Court abused its discretion in failing to vary downward at sentencing and issue a below-guidelines

9

sentence due to "the imminent threat upon [Sims'] life[.]" (Doc. No. 51, at 9.) This claim fails for several reasons. First, this issue was raised and denied on direct appeal. "A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances" that are not present here. *See DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) (quotation marks and citation omitted).

Second, even if the Court were to permit Sims to rehash arguments already addressed and rejected by the Sixth Circuit, the claim would fail for the same reason it was rejected by the court of appeals: it is foreclosed by the wavier in the plea agreement. (*See* Doc. No. 31, at 1.) It is well settled that a defendant may waive any right, including a constitutional right, in a plea agreement if the waiver is knowingly and voluntarily made. *United States v. Toth*, 668 F.3d 374, 377–78 (6th Cir. 2012); *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (quotation marks and citations omitted). Where a knowing and voluntary waiver has been executed, only challenges to the validity of the waiver itself are to be entertained. *See In re Acosta,* 480 F.3d 421, 422 (6th Cir. 2007); *see also Portis v. United States*, 33 F.4th 331, 335 (6th Cir. 2022) ("The process leading to the waiver . . . must be fair and comply with Rule 11 of the Federal Rules of Criminal Procedure."); *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003) ("When a [d]efendant waives his right to appeal his sentence in a valid plea agreement, this Court is bound by that agreement and will not review the sentence except in limited circumstances." (quotation marks and citation omitted)). In his plea agreement, Sims specifically waived his right to challenge a within-guidelines sentence. (Doc. No. 8, at 6.) As the Sixth Circuit determined on direct appeal, Sims' waiver was knowing and voluntary. (Doc. No. 31, at 4.) Even now, Sims does not suggest that his waiver was other than knowing and voluntary. *See Portis*, 33 F.4th at 335 (enforcing plea agreement waiver on § 2255

motions where petitioners did "not challenge the plea colloquy . . . [or] deny that they knowingly and voluntarily entered into the plea agreement"). This waiver provides a second reason to deny Ground Four.

Third, it is equally well settled that most issues surrounding the application of the advisory sentencing guidelines are not cognizable under § 2255. *See Snider v. United States*, 908 F.3d 183, 191 (6th Cir. 2018). "Indeed, every circuit to 'look[] at the issue has agreed that a defendant cannot use a § 2255 motion to vindicate non-constitutional challenges to advisory guideline calculations.'" *Bullard v. United States*, 937 F.3d 654, 660–61 (6th Cir. 2019) (quoting *Snider*, 908 F.3d at 191, and collecting cases). As observed in *Snider*, the collateral review statute for federal prisoners empowers a court to grant relief only where a sentence "was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such a sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." *Snider*, 908 F.3d at 189 (quoting 28 U.S.C. § 2255(a)).

Finally, as the Sixth Circuit found on appeal, the Court did take into consideration Sims' safety concerns in imposing sentence, notwithstanding Sims' current suggestion to the contrary. (Doc. No. 31, at 3; *see* Doc. No. 51, at 9.) While the Court believed that a high-end sentence would have been warranted, it agreed to give Sims "some consideration for the circumstances in which he found himself in[,]" and imposed a sentence in the middle of the applicable guidelines range. (Doc. No. 27, at 52.) As such, the record would not support Sims' argument that the Court failed to take into consideration "the imminent threat upon [Sims'] life" at sentencing. (Doc. No. 51, at 9.)

11

Nothing alleged by Sims furnishes a basis for finding that the Court's within-guidelines sentence was constitutionally infirm, unlawful, or contained a fundamental defect that resulted in a miscarriage of justice. *See Spencer v. United States*, 773 F.3d 1132, 1139 (11th Cir. 2014). The fourth ground, therefore, is denied.[5]

### D. Ineffective Assistance of Counsel (Ground One)

Sims' first ground for relief charges his trial counsel with ineffective assistance. Armed only with the fact that Attorney Pierce died before Sims' direct appeal was finalized, Sims speculates that his counsel was aware of his own "imminent death." (Doc. No. 51, at 4.) This alleged knowledge, he continues in a similar conclusory and speculative fashion, must have weighed heavily upon his counsel and rendered him "neither psychological[ly] [n]or physically fit to represent him[.]" (*Id.*) Because he believes—again, without any supporting facts—that his trial counsel placed his own concerns about his health over his client's legal concerns, Sims concludes that he must have received ineffective assistance of counsel. (*Id.*)

Sims' motion provides no basis in fact for alleging that counsel was ineffective. Again, relying exclusively on the fact that trial counsel passed away at some point after sentencing in this matter, Sims speculates that Attorney Pierce counsel was "aware of his imminent demise," rendering him ineffective. (Doc. No. 51, at 4.) Relief under § 2255 cannot be based on conjecture or speculation. A petitioner seeking redress through a § 2255 motion must set forth facts which

---

[5] To the extent Sims argues that the plea agreement was deficient because it failed to inform him of his right to a hearing on the non-weapons related supervised release violations (*see* Doc. No. 51, at 8), this argument would also fall flat. The plea agreement was limited to the felon-in-possession charge in this case, and, therefore, there was no need to address therein three other supervised release violations that were at issue in Case No. 5:12-cr-128. Moreover, at sentencing, the Court specifically asked Sims if he would like a hearing on the remaining supervised release violations. Sims advised the Court that it was his wish to admit the remaining violations, and that he was making this decision after having been afforded sufficient time to discuss the matter with his counsel. (Doc. No. 27, at 14–15.)

12

entitle him to relief. *Green*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735. Because Sims' motion provides no factual basis for granting relief, it is denied for this reason alone.

In his reply brief, Sims argues for the first time that "Mr. Pierce failed to present to the court any argument or claim, outlining how the Petitioner[']s actions were committed under duress as defined in § 5K2.12 of the U.S.S.G. [M]annual." (Doc. No. 59, at 4.) He complains that the "record is devoid of any mention of or for a downward departure pursuant to § 5K2.12 which is warranted 'if the defendant committed the offense because of serious . . . duress, under circumstances not amounting to a complete defense.'" (*Id*. at 5, quoting U.S.S.G. § 5K2.12.) He maintains that the failure to request a § 5K2.12 departure greatly prejudiced him because, had the departure been raised, there is a "reasonable probability that his sentence would have been more lenient." (*Id*. at 8, citation omitted).

This newly minted issue challenging the effectiveness of trial counsel is not properly before this Court because matters raised for the first time in a reply brief are waived. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010); *Hunt v. Big Lots Stores, Inc*., 244 F.R.D. 394, 397 (N.D. Ohio 2007); *see, e.g., Killian v. United States*, Nos. 1:13-cr-33, 1:14-cv-326, 2018 WL 1475607, at *3 (E.D. Tenn. Mar. 26, 2018) (finding issue of ineffectiveness raised for the first time in a reply brief in support of a motion to vacate waived). Sims failed to raise this issue in his motion, and it is, therefore, deemed waived.

Of course, even if the Court reached this issue, it would fail on the merits. Claims of ineffective assistance of counsel are analyzed under the familiar *Strickland* standard. Under *Strickland*, in order to succeed on such a claim, a defendant must make two showings. First, he "must show that [his] counsel's performance was deficient." *Strickland v. Washington*, 466 U.S.

13

668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Second, the defendant must also show that counsel's deficient performance prejudiced him. *Id*. The record would not support a finding under either prong.

As discussed above, trial counsel raised the issue of a downward variance due to Sims' concerns about his safety in a sentencing memorandum and again at the sentencing hearing. (*See* Doc. No. 16, at 5–6; Doc. No. 27, at 19–21, 24–25, 41–42; *see also* Doc. No. 31, at 2 [Sixth Circuit noting on appeal that "[c]ounsel for Sims argued [at sentencing] that Sims was entitled to a downward variance based on the fact that Sims witnessed his friend's murder, that another one of his friends was murdered shortly thereafter, and that Sims was also a target and had a $40,000 bounty on his head, compelling him to secure a firearm in order to protect himself and his pregnant girlfriend"). In fact, in his reply, Sims repeatedly cites to the transcript from the sentencing hearing where trial counsel advocated for a variance on this basis. (*See, e.g*., No. 59, at 4 (citing Doc. No. 27, at 25).) While trial counsel may not have specifically cited U.S.S.G. § 5K2.12, the issue of a reduced sentence due to Sims' safety concerns was placed before the Court, and the Court gave Sims "some consideration" for his safety concerns in imposing sentence. (*See* Doc. No. 31, at 3 (record cite omitted).) Sims could not, therefore, establish that his counsel was deficient in failing to raise the issue or that any such deficiency prejudiced him. His first ground for relief would fail for this additional reason.

## IV. CONCLUSION

For the foregoing reasons, Sims' motion to vacate, set aside, or correct his sentence is denied. Further, for all of the same reasons, the Court finds that "reasonable jurists" would not debate the Court's denial of Sims' motion to vacate. *See Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000). Accordingly, the Court certifies that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: January 25, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**