**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:19-cr-262 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| DAEMONTE D. SIMS, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On October 25, 2019, defendant Daemonte D. Sims ("Sims") was sentenced to a custody term of 57 months for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), to run consecutive to an 18-month sentence imposed for a supervised release violation in N.D. Ohio Case No. 5:12-cr-128, for an aggregate custody term of 75 months. (Doc. No. 18 (Judgment); *see* Minutes of Proceedings [non-document], 10/25/2019; *see also* Doc. No. 8 (Plea Agreement); Doc. No. 1 (Indictment).)

Sims now seeks a compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 69 (Motion).) Appointed counsel filed a supplement in support of a compassionate release. (Doc. No. 71 (Supplement).) Plaintiff United States of America (the "government") has filed an opposition to the motion (Doc. No. 72 (Response)). Appointed counsel requested leave to reply and was granted an extension of time in which to file a reply (*see* Doc. No. 74 (Motion for Extension of Time); Order [non-document], 2/16/2024), and, on March 14, 2024, appointed counsel filed a timely reply. (Doc. No. 76 (Reply).) For the reasons that follow, defendant's motion for a compassionate release is DENIED.

## I.     BACKGROUND

On May 1, 2019, an indictment issued charging Sims with one count of being a felon in passion of a firearm and ammunition. (*See* Doc. No. 1.) On July 8, 2019, with the benefit of a plea agreement, Sims entered a plea of guilty to the sole charge in the indictment and was sentenced as set forth above. (Minutes of Proceedings [non-document], 7/8/2019.)

On September 8, 2021, the Court denied Sims' first motion for a compassionate release. After determining that defendant's stated medical conditions and family caregiver issues, separately or in combination, did not satisfy the statutory requirement that there be extraordinary and compelling reasons justifying release, the Court held, in relevant part:

> But even if the Court were to find the requisite extraordinary and compelling reasons, a reduction of the prison term would not be appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a). See *United States v. Sherwood*, 986 F.3d 951 (6th Cir. 2021) (citing 18 U.S.C. § 3553(a) and directing district courts to consider all relevant statutory sentencing factors). Defendant, who is almost 30 years old, is currently serving a sentence for being a felon in possession of a firearm, a crime he committed while on supervised release for a prior federal conviction for felon in possession of [a] firearm. Defendant, whose criminal history category is VI, has a criminal history that began when he was 16 years old. His juvenile adjudications include robbery, breaking and entering, and violation of a court order. His adult convictions include burglary, failure to comply with order or signal of a police officer, tampering with evidence, prohibition of conveyance of drugs of abuse onto grounds of specified governmental facility, and the earlier federal conviction for being a felon in possession of a firearm. Defendant's willingness to possess a firearm, even when on federal supervised release for the same offense, suggests that he is unwilling to refrain from possessing weapons and thus presents a serious danger to the community. The nature and extent of his criminal history counsels strongly against granting the requested relief. The Court has also considered defendant's programming and prison disciplinary record, his release plan, and his family circumstances. But after considering all of the factors, the Court finds that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, protect the public, promote respect for the law and specific deterrence, and ensure just punishment. Based upon these same facts, and as indicated previously, the Court also finds that defendant poses a serious danger to the community. Further, to the extent that defendant requests to be released and to serve a period of supervised release on home

2

confinement, for the reasons already stated, defendant is not an appropriate candidate for release under § 3582, even with conditions.

(Order [non-document], 9/8/2021; *see* Doc. No. 34 (First Motion for Compassionate Release); Doc. No. 35 (Supplement).) On July 15, 2022, the Court denied Sims' second motion for compassionate release, for many of the same reasons cited in its denial of his initial request for compassionate release. (Order [non-document], 7/15/2022; *see* Doc. No. 60 (Motion); Doc. No. 61 (Supplement).)

On December 12, 2023, Sims filed his third motion for compassionate release. (*See* Doc. No. 69.) In his motion, he cited the fact that his great-grandmother was terminally ill as the basis for his motion. (*Id*. at 1.) He explained that upon the completion of his federal sentence, he would be transferred to state custody to address a pending Adult Parole Authority ("APA") violation for the same conduct and was hoping to resolve his state retainer as quickly as possible so that he could return home. (*Id*.; *see* Doc. No. 71, at 1.)

On January 5, 2024, appointed counsel supplemented the motion by advising the Court that Sims' great-grandmother had since passed away. (Doc. No. 71, at 1.) Despite her passing, counsel argued that Sims still qualified for compassionate release because Sims was "need[ed] at home now more than ever to help care for his grandmother who suffers from mental health issues and to help maintain the family home." (*Id*.) Counsel explained that Sims' grandmother, who had previously lived with his great-grandmother before her passing, "is unable to care for herself or the home because of serve mental illness." (*Id*. at 3.) Representing (without documentation) that the grandmother suffers from schizophrenia and bipolar disorder and is in need of Sims' assistance, counsel insists that Sims' circumstances now entitle Sims to relief under the recently expanded policy statement applicable to compassionate release motions. (*Id*.)

3

## II.     LAW AND DISCUSSION

The sentencing court has no inherent authority to reconsider and/or modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Instead, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49 (6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 585 (6th Cir. 2001)); *see United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019) ("Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute.") Under 18 U.S.C. § 3582(c), a court may only modify a term of imprisonment under the following circumstances: (1) upon a motion of the Director of the Bureau of Prisons ("BOP") or defendant for compassionate release; (2) as expressly permitted by statute or by Fed. R. Crim. P. 35; or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. § 3582(c)(1)–(2).

Sims does not seek relief under Rule 35, nor does he claim that he was sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered. Instead, he claims, for the third time, that he is entitled to a compassionate release. Under § 3582(c)(1)(A), a district court may grant a sentence reduction "only if it finds that the defendant satisfies three requirements: (1) 'extraordinary and compelling reasons warrant such a reduction'; (2) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) the relevant § 3553(a) factors support the reduction." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting § 3582(c)(1)(A)(i); *United States v Elias*, 984 F.3d 516, 518 (6th Cir. 2021)); *see United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). As the movant, the

defendant bears the burden to establish that he is eligible for a sentence reduction. *See United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021). Additionally, exhaustion of administrative remedies is a mandatory claims-processing rule that must be satisfied before a defendant may seek compassionate release. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (citations omitted).

The policy statement applicable to compassionate release motions, 18 U.S.C. § 1B1.13, was recently amended (effective November 1, 2023) and describes six categories of extraordinary and compelling reasons that individually, or in combination, may support a request for compassionate release. These categories are: (1) medical circumstances of the defendant; (2) the age of the defendant; (3) a defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury"; (5) "other reasons" similar in gravity as those articulated in (1)–(4); and (6) an "unusually long sentence." 18 U.S.C. § 1B1.13(b).

Noting that the motion, as supplemented, failed to establish exhaustion, the government represents that there is nothing in the record to satisfy this mandatory claims-processing rule, and that dismissal for this reason alone is warranted. (Doc. No. 72, at 1–2.) Sims, however, attaches to his reply a copy of the warden's December 15, 2023 response to Sims' request for compassionate release based on his great-grandmother's health concerns. (Doc. No. 76-1 (Warden's Response).) Sims having properly submitted a request to his warden for release and having received a denial of that request, the Court finds that Sims has exhausted his administrative remedies.

The Court, therefore, turns to a consideration of whether defendant has demonstrated the existence of extraordinary and compelling reasons identified in § 3582(c)(1)(A)(i), and discussed in detail in § 1B1.13(b), as amended. Citing to the third category—family circumstances of the defendant—Sims argues that his grandmother's need for assistance constitutes an extraordinary and compelling reason for release under § 1B1.13(b)(3). That section provides, in part, that the "incapacitation" of the defendant's spouse or registered partner or parent may qualify as an extraordinary and compelling reason for early release where "the defendant would be the only available caregiver[.]" § 1B1.13(b)(3)(B)–(C). Subsection (D) permits the defendant to similarly meet the initial threshold for compassionate release by establishing the incapacitation of another "immediate family member or an individual whose relationship with the defendant is similar in kind to [a child, spouse, registered partner, or parent]", and that defendant "would be the only available caregiver for such family member or individual." § 1B1.13(b)(3)(D). For purposes of this subsection, the Sentencing Commission defined "immediate family member" as "any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant." *Id.*

Even though Sims' grandmother qualifies as an "immediate family member" under § 1B1.13(b)(3)(D), Sims has failed to establish that his grandmother is incapacitated. Sims provides no documentation to establish his grandmother's diagnosis of severe mental illness, nor does he offer any substantiation for the claim that this mental illness has rendered his grandmother incapable of self-care. Further, while he represents that his grandmother lived with his great-grandmother prior to her death, Sims has failed to establish that he is now the only available caregiver for his grandmother.

Sims also suggests that he meets the requirements of the fifth category of extraordinary and compelling reasons; namely, the "other reasons" category. *See* § 1B1.13(b)(5). Under this "catchall" provision, a defendant may establish the requisite extraordinary and compelling reasons where he can demonstrate "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Id*. In support, he argues that one "poor decision to possess a gun" on the day he was arrested on the present offense led to a 57 month sentence in this case, an 18-month sentence on the supervised release violation, and an APA holder in state court. (Doc. No. 71, at 4.) He complains that he "will serve three consecutive sentences for one single bad decision." (*Id*. at 5.)[1] According to Sims, these circumstances, when combined with his grandmother's need for assistance, support a finding of extraordinary and compelling reasons to justify early release. (*Id*. at 4.)

The Court disagrees with Sims' representation that he made "one bad decision." His current predicament, though unfortunate, was the product of numerous bad decisions made over the course of many years that resulted in an extensive criminal record, restrictions on his future conduct, and periods of supervised release with conditions. As a result, his possession of a weapon on January 26, 2019, was illegal in light of his status as a convicted felon; it also violated the terms of his state and federal terms of supervised release. That Sims' actions triggered a number of foreseeable consequences, even in combination with his grandmother's unsubstantiated need for assistance, does not rise to the level of extraordinary and compelling. *See United States v. McCall*, 56 F.4th

---

[1] Sims further notes that, because of the APA holder, he has not been transferred to a halfway house to serve out the remainder of his sentence. He complains that he is "serving more time in federal prison than he would have otherwise" and that the APA holder "will prevent him from receiving the transitional assistance from the halfway house." (*Id*. at 4–5.)

1048, 1056 (6th Cir. 2022) (noting that the "text of the compassionate-release statute gives way to a basic inference: What is 'ordinary' and routine cannot also be considered extraordinary and compelling" (quoting *United States v. Wills*, 997 F.3d 685, 688 (6th Cir. 2021))).

But even if Sims had cleared this initial hurdle, the Court would still have denied his motion because the sentencing factors in § 3553(a) do not favor release. *See United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a) and directing district courts to consider all relevant statutory factors). As the Court has now recognized on numerous occasions, defendant's extensive criminal history that resulted in him being a criminal history category VI, his unwillingness to refrain from owning or possessing weapons, and his past failures to abide by conditions while on supervision all counsel against early release.

The Court has also considered the prison programming Sims has completed (including his successful completion of the RDAP), his lack of disciplinary infractions in prison, and his concern for his family members. But after considering all of the § 3353(a) factors, the Court again determines that a reduction in sentence would undermine the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant. Based on these same facts, the Court also finds (once again) that defendant poses a danger to the community.

8

### III.     CONCLUSION

For the foregoing reasons, the Court denies defendant's motion, as supplemented, for a compassionate release.

**IT IS SO ORDERED**.

Dated: April 9, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

9